1

2                                    **E-Filed 3/29/07**

3

4

5

6

7

8                          NOT FOR CITATION

9         **IN THE UNITED STATES DISTRICT COURT**

10       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN JOSE DIVISION**

12

13   ANTHONY S. NIKBAKHSHTALI,               Case Number C 05-04637 JF

14                    Plaintiff,             ORDER[1] GRANTING IN PART AND
                                             DENYING IN PART PLAINTIFF'S
                                             MOTION FOR SUMMARY
15              v.                           JUDGMENT AND DENYING
                                             DEFENDANT'S CROSS-MOTION
16   JO ANNE B. BARNHART, Commissioner of    FOR SUMMARY JUDGMENT;
     Social Security,                        ORDER OF REMAND
17
                     Defendant.
18

19

20        Plaintiff Anthony S. Nikbakhshtali ("Nikbakhshtali") seeks reversal of a decision by

21   Defendant Commissioner of Social Security ("Commissioner") denying him disability insurance

22   benefits.  The challenged decision was rendered by Administrative Law Judge Brenton L.

23   Rogozen (the "ALJ") on July 25, 2005.  The ALJ's decision became final when the Appeals

24   Council of the Social Security Administration denied Plaintiff's request for review of the ALJ's

25   decision.  Plaintiff filed a motion for summary judgment on July 24, 2006.  Defendant filed a

26

27   ─────────────────────

28        [1] This disposition is not designated for publication and may not be cited.

1  cross-motion for summary judgment on August 22, 2006.  Plaintiff filed a reply on September

2  14, 2006.  The matter was submitted without oral argument.

3                                    **I. BACKGROUND**

4         The following facts are taken from the ALJ's decision dated July 25, 2005, and the

5  accompanying administrative record.  Nikbakhshtali is a thirty-five year old man with a high

6  school education and some college education; he worked in the past as an auto mechanic.

7  Admin. R. at 16.  Nikbakhshtali alleges that he became disabled on June 17, 2003, as a result of

8  spinal injury and spinal pain.  *Id.*  His application for Disability Insurance Benefits and

9  Supplemental Security Income payments was initially denied, and denied again after

10  reconsideration, and he timely requested a hearing.  *Id.*  Nikbakhshtali, who was represented by

11  counsel, appeared and testified at a hearing before the ALJ on June 15, 2005 in San Jose,

12  California. *Id.* at 15.

13         The ALJ found that Nikbakhshtali is not disabled within the meaning of the Social

14  Security Act and therefore is not entitled to the benefits for which he applied.  *Id.* at 21.  After

15  consideration of the entire record, including medical opinions described below, the ALJ found

16  the following: Nikbakhshtali has not engaged in substantial gainful activity since the alleged

17  onset of the disability.  *Id.* at 21.  The residual effect of his spinal injury is considered "severe"

18  based on the requirements in the Regulations 20 C.F.R. §§ 404.1520 and 416.920.  *Id.*  However,

19  this medically determinable impairment does not meet or medically equal one of the listed

20  impairments in Appendix 1, Subpart P, Regulation No. 4.  *Id.*  Nikbakhshtali's allegations

21  regarding his limitations are not totally credible.  *Id.*  He has the residual functional capacity to

22  lift and carry ten pounds frequently and twenty pounds occasionally, to sit for six hours of an

23  eight hour workday, to stand and/or walk two hours total in an eight-hour workday, and he is

24  limited to occasional stooping, crouching, and climbing of ladders, ropes, and scaffolds.  *Id.*

25  Nikbakhshtali's previous work as an auto mechanic required that he perform medium level work.

26  *Id.* at 20.  Now, he is limited to sedentary work. *Id.*  Accordingly, Nikbakhshtali is unable to

27  perform his past relevant work.  *Id.* at 20.  Based on an exertional capacity for sedentary work,

28

1     Nikbakhshtali's age, education, and work experience, he is "not disabled" under Medical

2     Vocational Rule 201.28, Appendix 2, Subpart P, Regulations No. 4. *Id.* at 22.

3         The ALJ found further that Nikbakhshtali has no alleged mental impairments that satisfy

4     the diagnostic criteria of the psychiatric review technique form. *Id.* at 19.  He has no restrictions

5     on his daily activities, no difficulty in maintaining social functioning, in maintaining

6     concentration, persistence, or pace, and no history of episodes of decompensation. *Id.*  His

7     mental impairments, if any, are "non-severe." *Id.*  Therefore, Nikbakhshtali's capacity for

8     sedentary work is not compromised by any non-exertional limitations. *Id.*  Ultimately,

9     Nikbakhshtali's medically determinable spinal injury does not prevent him from performing

10    sedentary work, and therefore he is not under a "disability" as defined in the Social Security Act.

11    *Id.*

12        On August 18, 2005, Nikbakhshtali requested administrative review of the ALJ's

13    decision by the Appeals Council. *Id.* at 10.  His request was denied and the ALJ's decision thus

14    became final. *Id.* at 5-7.  Nikbakhshtali commenced this action on July 24, 2006, pursuant to 42

15    U.S.C. § 405(g).  In his motion for summary judgment, Nikbakhshtali requests reversal of the

16    Commissioner's denial of disability insurance benefits, and remand of his case "for further

17    administrative proceedings, including, but not limited to proper analysis of the evidence from the

18    examining and treating sources in accordance with the Ninth Circuit case law and the

19    Commissioner's regulatory standard."  Mot. Summ. J. at 17.

20                           **II.  LEGAL STANDARD**

21    **A.  Standard for Reviewing the Commissioner's Decision**

22        Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the

23    Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the

24    decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is

25    based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523

26    (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the

27    term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it

28

is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

**B.  Standard for Determining Disability**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.*  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. *Id.*  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.*  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[2] to perform his or her past

---

[2]A claimant's residual functional capacity is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1 work; if so, the claimant is not disabled and the claim is denied. *Id.* The plaintiff has the burden

2 of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If

3 the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner

4 then bears the burden of establishing that the claimant can perform other substantial gainful

5 work;[3] the determination of this issue comprises the fifth and final step in the sequential analysis.

6 20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as*

7 *amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

8 **III. DISCUSSION**

9 Nikbakhshtali seeks summary judgment because the Commissioner "failed to take into

10 account the record in its entirety, including the non-exertional limitations identified by the

11 treating and examining physicians" and "failed to issue a proper credibility finding."

12 Alternatively, he requests remand for a proper evaluation by the ALJ. Mot. Summ. J. at 17. In

13 his reply memorandum, Nikbakhshtali asserts that the ALJ (1) failed to provide a satisfactory

14 explanation for disregarding Dr. Salamacha's Report, (2) committed reversible error by relying

15 solely on the grids rather than on the testimony of a vocational expert, and (3) failed to provide

16 an adequate rationale for his credibility finding, which Defendant's post hoc explanation cannot

17 cure. The Commissioner asserts that the ALJ properly supported his decision to not rely on

18 portions of Dr. Salamacha's opinion, that the ALJ correctly relied on the grids and was not

19 required to use a vocational expert, and that there was substantial evidence to support the ALJ's

20 credibility finding. Cross Mot. Summ. J.

21  **A. Rejection of Physician's Opinion**

22 Nikbakhshtali first claims that the ALJ improperly rejected the opinion of his consultative

23 examining orthopedist, Lara Salamacha, M.D., without providing specific and legitimate reasons

24

25 ───────────────

26 [3] There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the

27 testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

28

1  for doing so.  The Commissioner asserts that the ALJ provided legally sufficient reasons for

2  declining to adopt Dr. Salamacha's opinion.  The ALJ's decision states that Dr. Salamacha

3  examined Nikbakhshtali in March, 2004 and describes Dr. Salamacha's report as follows.

4      The claimant reported that he fell off a one-story roof when attempting to reach for a
    ladder.  The doctor diagnosed a T12 anterior wedge compression fracture.  The doctor
5      notes that the claimant is followed by X-ray for serial healing, and that his doctor has
    scheduled a discussion of bone cement augmentation versus a spinal fusion procedure in
6      the next few weeks.  The doctor opines that the claimant has no restrictions in sitting; he
    is able to lift ten pounds frequently and twenty pound occasionally at a tabletop level; he
7      is precluded from performing spine flexion for lifting from ground to table level; he is
    limited to rare bending, stooping, and crouching; he is able to stand and walk for two
8      hours in the morning and two hours in the afternoon in thirty minute intervals as
    tolerated; he should be allowed to rest for ten to fifteen minutes between intervals; and,
9      that this should improve with time, especially if he receives bone augmentation.

10  Admin. R. at 18.

11         The ALJ's discussion accurately reflects the contents of Dr. Salamacha's report as found

12  in the medical record.  *Id.* at 153-157.  Despite Dr. Salamacha's report, however, the ALJ

13  concluded that Nikbakhshtali "is able to lift and carry ten pounds frequently and twenty pounds

14  occasionally; he is to sit for six hours of an eight hour workday; he is able to stand and/or walk

15  for two hours of an eight hour workday; and, he is limited to the occasional stooping, crouching,

16  and climbing of ladders, ropes, and scaffolds."  Admin. R. at 20.  The ALJ did not conclude that

17  a ten to fifteen minute break between thirty minute intervals of standing is necessary.  The ALJ

18  based his decision on the reports of doctors who examined Nikbakhshtali subsequent to Dr.

19  Salamacha as well as on Nikbakhshtali's testimony, stating in his decision that "[w]hile normally

20  ample weight is given to the DDS evaluators' and reviewers' opinions, to the extent that they

21  disagree with the findings herein, they did not have the benefit of the most recent records in this

22  matter, nor of the testimony at the hearing."  Admin. R. at 19.

23         As to Nikbakhshtali's physical condition, the ALJ considered the opinions of both

24  examining and non-examining physicians, including Nikbakhshtali's treating physician, Dr.

25  Goldberg.  The ALJ notes that Nikbakhshtali underwent a Residual Physical Functional Capacity

26  Assessment by Dr. Wong in April, 2004.  Dr. Wong reported that the rest restriction previously

27  imposed on Nikbakhshtali (by Dr. Salamacha), is not supported by Nikbakhshtali's "normal

28

Case No. C 05-04637 JF
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; ORDER OF REMAND
(JFEX2)

1   strength, lack of need for an assistive device, lack of dizziness, and independence in all activities

2   of daily living." Admin. R. at 18, 166. This opinion was confirmed by another reviewing

3   physician in August, 2004. Admin. R. at 176. On June 15, 2004, Nikbakhshtali underwent a

4   vertebroplasty procedure for treatment of pain. One month after the procedure, on July 16, 2004,

5   treating physician Dr. Goldberg reported that Nikbakhshtali was "75 % better when not hurting"

6   and "sitting longer- now 30-45 [minutes]" with "flares of pain three [times per] week" and that

7   the burning pain he felt on his right side when sitting is now gone. Admin. R. at 190. In

8   November, 2004, Dr. Goldberg noted mild tenderness, no radiating pain, complaints of mild

9   discomfort, and a normal neurological exam. He discontinued Nikbakhshtali's Vicodin

10   prescription.  In February, 2005 an MRI revealed "an anterior edge compression fracture of T12

11   [with n]o evidence for extrusion of  fracture fragments into the central spinal canal no evidence

12   for posterior element involvement and no evidence for instability." Admin. R. at 227. Dr.

13   Goldberg noted that Nikbakhshtali reported using a back brace to help him sit erect, but that it

14   does not alleviate his pain. *Id.* at 228. Dr. Goldberg refilled Nikbakhshtali's Vicodin

15   prescription and advised him that he will move to a chronic pain management approach if there is

16   no surgical option. *Id.*

17         Under Ninth Circuit authority, "the Commissioner must provide 'clear and convincing'

18   reasons for rejecting the uncontradicted opinion of an examining physician . . . [and] even if

19   contradicted by another doctor, [the opinion] can only be rejected for specific and legitimate

20   reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821

21   (9th Cir. 1995). The ALJ does not state expressly why he rejects specific portions of Dr.

22   Salamacha's report, but he clearly states that he has considered the conflicting opinions in the

23   reports of the physicians, and those that do not support his findings are in conflict because they

24   do not have the benefit of the most recent records. This "specific and legitimate" reason is

25   supported by substantial evidence in the record. Dr. Salamacha examined Nikbakhshtali in

26   March, 2004, *before* he underwent a vertebroplasty. Dr. Salamacha even stated in her report that

27   Nikbakhshtali's condition "will likely improve with time, especially should he receive bone

28

augmentation for his compression fracture."  Admin. R. at 157.  Accordingly, the ALJ's reliance

on later reports, which do not impose the same rest restriction as those imposed by Dr.

Salamacha, was not unreasonable, and the Court includes that the ALJ's rejection of Dr.

Salamacha's opinion was not erroneous.

**B.  No Consideration of Vocational Expert Testimony**

Nikbakhshtali asserts that the ALJ erred in failing to obtain vocational expert testimony,

and choosing instead to rely solely on the grids in determining what work Nikbakhshtali is

capable of performing.  According to the Ninth Circuit,

> [i]f the grids accurately and completely describe a claimant's impairments, an ALJ may
> apply the grids instead of taking testimony from a vocational expert.  If they do not, then
> the ALJ must also hear testimony from a vocational expert**.**  The grids are based only on
> strength factors.  Thus they are sufficient only when a claimant suffers only from
> exertional limitations.

*Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Non-exertional limitations are

restrictions that affect a person's ability to meet the non-strength demands of jobs.    Examples of

non-exertional limitations include

> difficulty of functioning because you are nervous, anxious, or depressed; you have
> difficulty maintaining attention or concentrating; you have difficulty  understanding or
> remembering detailed instructions; you have difficulty in seeing or hearing; you have
> difficulty tolerating some physical feature(s) of certain work settings. . . ; or you have
> difficulty performing the manipulative or postural functions of some work such as
> reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. § 404.1569a(c).  The Ninth Circuit also has held that pain can be a non-exertional

limitation.  *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985).  "[T]he fact that a non-

exertional limitation is alleged does not automatically preclude application of the grids."

*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 577 (9th Cir. 1988).  In

determining whether a non-exertional limitation precludes reliance on the grids, the ALJ "should

first determine if a claimant's non-exertional limitations significantly limit the range of work

permitted by his exertional limitations."  *Id.*

1    Nikbakhshtali argues that the ALJ erred because Nikbakhshtali suffered from both

2  exertional and non-exertional limitations and that the record identifies his "significant non-

3  exertional limitations."  Mot. Summ. J. at 13.  Specifically, Nikbakhshtali contends that he

4  suffers "chronic pain, which is managed by periods of rest as well as frequent changes in

5  positions."  *Id.*   He also alleges that the record supports "significant findings regarding a severe

6  mental limitation . . . [and that his] diagnoses include anxiety disorder, NOS' obsessive

7  compulsive disorder; depressive disorder, NOS; and social phobia."  Pl. Rply at 4.

8    The ALJ considered the opinions of both examining and non-examining physicians.   The

9  ALJ noted that in March, 2004, Dr. Salamacha opined that Nikbakhshtali is limited to "rare

10  bending, stooping, and crouching" and "should be allowed to rest ten to fifteen minutes between

11  intervals" of sitting and standing.  Admin. R. at 17.  Dr. Thurstone examined the claimant and

12  reported in March, 2004 that Nikbakhshtali had no mental impairment that would limit his ability

13  to engage in work activity, and that while he does suffer pain, it would not qualify for a

14  diagnosis.  *Id.* at 18.  In an April 2004 Psychiatric Review Technique Form (PRTF), which was

15  later affirmed in August, 2004, Dr. Ikawa, a reviewing physician, opined that Nikbakhshtali has

16  no medically determinable mental impairment, and reported that Nikbakhshtali denies any

17  difficulties with concentration or social interactions.  *Id.*  Also in April, 2004, Dr. Wong, a

18  reviewing physician, opined that Nikbakhshtali is limited to "occasional stooping, crouching and

19  climbing of ladders, ropes, and scaffolds" and that the previous rest restriction is not supported

20  by Nikbakhshtali's "normal strength, lack of need for an assistive device, lack of dizziness, and

21  independence in all activities of daily living."  *Id.*  In November, 2004, in a follow up report after

22  Nikbakhshtali's vertebroplasty, his treating physician, Dr. Goldberg, noted mild tenderness, and

23  told Nikbakhshtali that he would discontinue his Vicodin prescription.  However, in February,

24  2005 Dr. Goldberg reported that Nikbakhshtali's pain is "still moderately severe and worse with

25  prolonged standing, better with leaning forward or lying down." Admin. R. at 228.   In his

26  assessment, Dr. Goldberg describes "persistent pain," stated that he would refill Nikbakhshtali's

27

28

1    Vicodin prescription, and determined that he would move to a chronic pain management

2    approach if there is no surgical option.

3          At the hearing on the July 25, 2005, Nikbakhshtali testified that he is unable to sit or

4    stand for a long time, that he lies down more now, that he takes Vicodin every two to eight hours,

5    but that the pain is always there.  He stated that he last drove two years ago and lives with his

6    parents and brother and that his mother cooks for him and does his laundry.

7          After considering all of the evidence summarized above, the ALJ found that

8    Nikbakhshtali's non-exertional limitations are not severe and that he can perform sedentary

9    work.  The ALJ therefore applied the grids as opposed to obtaining a vocational expert to

10   determine that Nikbakhshtali is not disabled.

11         Reviewing the record as a whole, the Court concludes that substantial evidence supports

12   Nikbakhshtali's allegations of non-exertional limitations.  Although the ALJ points to physician

13   reports that state Nikbakhshtali suffers no mental impairment, he declined to consider the

14   assessments of Dr. Frank Mead who reported that Nikbakhshtali suffers from depression and

15   social phobia.  Admin. R. at 244-69.  Dr. Goldberg reports persistent pain that is moderately

16   severe and postural limitations stating that Nikbakhshtali is better with leaning forward or lying

17   down.  Moreover, Nikbakhshtali's testimony reveals significant debilitating pain, which the ALJ

18   discredited based on an inadequate credibility finding, as discussed below.  This is a close case.

19   Because it concludes that it must remand in any event for a proper determination as to

20   Nikbakhshtali's credibility, the Court likewise will remand for reconsideration and express

21   findings as to the existence of non-exertional limitations and the adequacy of the grids.

22   **C.  Credibility Finding**

23         Nikbakhshtali contends that the ALJ failed to make a proper credibility finding before

24   deciding to disregard Nikbakhshtali's subjective pain complaints.   According to the Ninth

25   Circuit, the ALJ's findings as to a claimant's credibility "must be supported by specific, cogent

26   reasons."  Specifically, the claimant's testimony as to the severity of symptoms cannot be

27   discredited

28

Case No. C 05-04637 JF
 ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; ORDER OF REMAND
(JFEX2)

merely because they are unsupported by objective medical evidence.  Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'  'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'

*Reddick v. Chater*, 157 F.3d 715, 722.  Social Security Ruling 96-7p (SSR 96-7p) provides seven factors under 20 CFR 404.1529(c) and 416.929(c) that the ALJ must consider, in addition to the objective medical evidence, in assessing the credibility of a claimant's testimony.  These factors are:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p .

As to Nikbakhshtali's subjective complaints, the ALJ considered the medical and documentary evidence and found the following:

that there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining physicians, the level of restrictions on the claimant in the physician opinions of record, and the level of follow-up treatment, including diagnostic testing, ordered by the treating physician.

Admin. R. 19.  The ALJ thus determined that "the allegations by the claimant as to the intensity, persistence, and limiting effects of his symptoms are not well supported by probative evidence and not wholly credible."  *Id.*

The Commissioner's brief points to specific evidence in the record of discrepancies between Nikbakhshtali's allegations of severe and debilitating pain and the physician reports, diagnostic tests, and frequency and degree of treatment.  No such explanation is present in the ALJ's decision, however.  Although the ALJ provides summaries of the various physicians'

1   reports and even states that he has "considered the claimant's allegations of disabling pain and

2   limitations pursuant to Social Security Rule 96-7p and the Regulations," he fails to identify

3   exactly what testimony is not credible and what evidence undermines the claimant's complaints.

4   SSR 96-7p explicitly states that "[i]t is not sufficient for the adjudicator to make a single,

5   conclusory statement that 'the individual's allegations have been considered' or that 'the

6   allegations are (or are not) credible.'"  Instead, the ALJ's decision "must contain specific reasons

7   for the finding on credibility, supported by the evidence in the case record, and must be

8   sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

9   the adjudicator gave to the individual's statements and the reasons for that

10  weight."  Because the ALJ did not state specific reasons for his credibility finding, his decision

11  did not meet the requirements set forth in SSR 97-7p.  Accordingly, the case will be remanded

12  for a proper determination as to the credibility of Nikbakhshtali's subjective complaints.

### IV. ORDER

14      (1) Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part;

15      (2) Defendant's cross-motion for summary judgment is DENIED; and

16      (3) This case is REMANDED to the Social Security Administration for further

17      proceedings consistent with this opinion.

21  DATED: March 29, 2007

_____
JEREMY FOGEL
United States District Judge

1    Copies of this Order have been served upon the following persons:

2    Harvey Peter Sackett
     hps@hpspc.com, lucyc@sackettlaw.com; julie@sackettlaw.com; juanita@sackettlaw.com
3

4    Kristina Helen Shute, Esq
     Kristina.H.Shute@ssa.gov
5

     Sara Winslow
6    sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-04637 JF
 ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; ORDER OF REMAND
(JFEX2)